John M. BLICHA, Petitioner

v.

UNEMPLOYMENT COMPENSATION BOARD OF REVIEW, Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs March 18, 2005.
Decided June 15, 2005.

---

Judith H. Veres, Charleroi, for petitioner.

Joseph P. McHugh, Pittsburgh, for intervenor, Bolsan Company, Inc.

BEFORE: McGINLEY, J., and SMITH–RIBNER, J., and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

John M. Blicha (Claimant) petitions for review of the August 4, 2004 order of the Unemployment Compensation Board of Review (Board) that denied Claimant benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law), Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended,* 43 P.S. § 802(e).[1] Claimant contends that: 1) the Board erred in determining that his employment, as defined under Section 4 of the Law, 43 P.S. § 753, ended on January 28, 2004; 2) the Board erred in determining that Bolsan, Inc. (Employer) had met its burden of proof in demonstrating that Claimant had been terminated for willful misconduct; and 3) the Board erred by failing to afford Claimant the opportunity to examine a computer and procure expert testimony. For the reasons that follow, we affirm.

Claimant was hired by Employer as its general manager on January 2, 2001. The terms of employment were set by an Employment Agreement (Agreement). R.R. at 105a–109a. Paragraph Two of the Agreement, specifically set forth that

> [s]ubject to paragraphs 4 and 5 hereof, the terms of the Executive's employment hereunder shall be for a term commencing on the date hereof and will continue unless and until the employment is terminated by either party giving to the other not less than 6 months written notice, provided, however, that such notice shall not be effective for any termination of employment earlier than the first anniversary of this Agreement.

R.R. at 105a.

Paragraph Five of the Agreement provided that Employer could terminate Claimant without notice if the termination was for cause. *Id.* at 107a. On January 28, 2004, Employer provided Claimant with six months notice of its intent to

---

1. Section 402(e) of the Law provides that an employee shall be ineligible for compensation for any period "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work...." 43 P.S. § 802(e).

terminate his employment, effective July 28, 2004. The written notice indicated that Claimant was to continue to receive all benefits of employment, including his salary, use of a company car, cell phone, credit card, and all health and related benefits. *Id.* at 116a. The notice also set forth, *inter alia*, that Claimant was not required to report to work for the remainder of his term of employment and specifically that he would be eligible to apply for unemployment compensation benefits. *Id.* In addition, the letter reminded Claimant of the Restrictive Covenant set forth in Paragraph Seven of the employment contract. *Id.*

In January of 2004, Employer completed a review of Claimant's laptop computer and discovered that pornographic material had been downloaded onto the computer's hard drive. As a result, Employer contacted its network administrator, Keith Mower (Mower), and asked him to perform an investigation of the materials on the computer. R.R. at 51a–52a. As a result of the investigation, Mower discovered that Claimant had downloaded over 150 pornographic images to his computer over the previous 90–day period. *Id.* at 118a–128a. Mower determined that these images had been downloaded using Claimant's assigned computer and password; in addition, the images were downloaded during business hours when Claimant should have been working. *Id.* at 77a–78a; 117a–121a.

Employer's computer and e-mail usage policy provides in pertinent part that company computers are "intended for business use" and that "[Employer] prohibits the use of computers and the e-mail system in ways that are disruptive, offensive to others, or harmful to morale." *Id.* at 130a. The policy also specifically provides that "the display or transmission of sexually

explicit images, messages, and cartoons is not allowed." *Id.*

On February 25, 2004, at Employer's request, Claimant attended a meeting to discuss a variety of administrative matters. *Id.* at 56a. Such request included a prior e-mail from Employer's Divisional Finance Director, Stuart Diggles (Diggles), to Claimant which stated the following:

> With regard to the time and location of the meeting it is obvious that I now have to remind you that although "relieved of all duties" you are still an employee of [Employer] and are being remunerated as such, and are therefore obliged to respond to requests from the company having been given reasonable notice.

R.R. at 127a.

At the meeting, Employer specifically informed Claimant of the investigation into his Internet and e-mail usage while at work and informed him that his downloading of pornographic images constituted a breach of Employer's policies. *Id.* at 60a. At that time, Employer terminated Claimant's employment effective immediately based on the ground of willful misconduct. *Id.*

On February 15, 2004, Claimant filed a claim for unemployment compensation benefits. R.R. at 5a–8a. The Duquesne Unemployment Compensation Service Center (UCSC) issued a notice of determination denying Claimant's application for benefits on March 16, 2004, under Section 402(e) of the Law, 43 P.S. § 802(e). R.R. at 23a–25a. On appeal and in a decision dated May 18, 2004, the Referee reversed the UCSC's notice of determination by finding that Claimant "was placed in lay-off status" and therefore was "permanently terminated [from] his employment and that it would be effective as of July 28, 2004." *Id.* at 132a–133a. On August 4, 2004, the Board reversed, finding that Claimant was not laid off. According to

the Board, Claimant was given notice in January 2004 that his employment would end in July 2004 and termination was then accelerated and changed to a termination for cause effective February 25, 2004, due to Claimant's willful misconduct by violating Employer's computer and e-mail policy. *Id.* at 183a–185a.[2]

Claimant argues that the Board erred by failing to determine that Claimant's employment ended on January 28, 2004, as a result of an economic downturn in the aerospace industry. Claimant cites Section 4(*l*)(1) of the Law which defines employment as "all personal service performed for remuneration by an individual under any contract of hire...." 43 P.S. § 753(*l*)(1). In addition, Claimant cites Section 4(u) of the Law which provides that "[a]n individual shall be deemed unemployed (I) with respect to any week (i) during which he performs no services for which remuneration is paid or payable to him and (ii) with respect to which no remuneration is paid or payable to him...." 43 P.S. § 753(u). As a result, Claimant argues that in Pennsylvania, an individual may no longer be engaging in active employment, performing personal service for remuneration, yet not be considered "unemployed" for purposes of calculating benefit weeks.

According to Claimant, he began working for Employer on January 2, 2001, pursuant to the Agreement, which absent employee disability or discharge for cause, required six months notice of termination. Claimant proceeds to argue that pursuant to Employer's letter dated January 28, 2004, he was immediately stripped of all his duties and banned from the premises without Employer's permission. Claimant

argues that Diggles' testimony supports his claim that he performed no duties for Employer after January 28, 2004. R.R. at 64a. Furthermore, Diggles testified that Claimant did not return to the company's premises until requested to attend a meeting with Employer on February 25, 2004. *Id.* at 56a.

Claimant cites *Hock v. Unemployment Compensation Board of Review*, 50 Pa. Cmwlth. 517, 413 A.2d 444 (1980), for the proposition that receipt of post-termination benefits in and of itself does not create a continuing employment relationship or preclude an award of unemployment compensation benefits. Claimant also argues that the receipt of holiday, vacation, and sick pay, based upon accumulated past service or the receipt of deferred compensation, does not bar receipt of unemployment compensation benefits on the basis that Claimant was not unemployed. *Erie Ins. Group v. Unemployment Compensation Board of Review*, 654 A.2d 105 (Pa. Cmwlth.1995).

Claimant contends that under the terms of the Agreement, he was entitled to six months notice of termination, during which time he would have performed his regular duties while receiving his normal wages, fringe benefits, including use and possession of a laptop, cell phone, and company car. Claimant in essence argues that he and Employer negotiated and agreed to a notice provision similar to the notice requirements of the Worker Adjustment and Retraining Notification Act (WARN), 29 U.S.C. § 2102(a), requiring employer to provide sixty days notice of a plant closing. Thus, Claimant concludes that any amounts received by him after post-separation, constituted payments in lieu of such

---

**2.** Our standard of review is limited to determining whether the necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated or whether errors of law were made. *Sharp Equip. Co. v. Unemployment Compensation Board of Review*, 808 A.2d 1019 (Pa.Cmwlth. 2002).

notice and do not represent payments for either current or prior service. *Georgia–Pacific Corp. v. Unemployment Compensation Board of Review,* 157 Pa.Cmwlth. 651, 630 A.2d 948 (1993) (discussing that the pertinent question under WARN is whether the employee has received the notice provided by law, not whether the employee lost wages or benefits). We disagree that Claimant was terminated on January 28, 2004.

■ The record demonstrates that the Board has substantial evidence to conclude that Claimant's employment did not end on January 28, 2004 as a result of an economic downturn, but rather ended on February 25, 2004 as a result of willful misconduct. According to the record, Claimant's employment Agreement explicitly set forth that his employment could only be terminated "by either party giving to the other not less than 6 months written notice." R.R. at 105a. As the Board appropriately found, on January 28, 2004, Claimant was given six months notice that his employment would be terminated effective July 28, 2004. *Id.* at 183a.[3] Furthermore, the record clearly demonstrates that such notice to Claimant did not constitute an instant termination of Claimant's employment or in the alternative, a lay-off. The January 28, 2004 letter clearly stated that Claimant's "employment will end effective July 28, 2004." R.R. at 116a. As the Court held in *Chinn v. Unemployment Compensation Board of Review,* 57 Pa. Cmwlth. 582, 426 A.2d 1250, 1252 (1981), language used by an employer informing an employee of termination must include both "immediacy and finality." There is nothing in the notice sent to Claimant to suggest that termination was immediate. Diggles also testified that based upon the

January 28, 2004 letter and a subsequent conversation with Claimant, the understanding was that Claimant's employment was to be "terminated six months later, on the 28th of July." R.R. at 48a. Thus, the Board did not err in determining that Claimant's employment ended on February 25, 2004 as a result of willful misconduct.

Claimant argues that the Board erred in finding that Employer had met its burden of demonstrating willful misconduct. Specifically, Claimant challenges Employer's computer expert, Mower, on the basis that he was not an on-site employee; that the firewall which included a tracking function was never activated; and that Mower testified he lacked personal knowledge as to who actually accessed the computer in question. Claimant also contends that Diggles acknowledged the possibility that other people had access to Claimant's computer or that someone else had used the computer for an improper purpose.

Claimant also argues that the record demonstrates that he unequivocally denied having viewed the pornographic material found on his computer and that such material was "absolutely reprehensible." R.R. at 93a. According to Claimant, there were days when he would log onto his computer and then leave the office to visit customers and that it was not uncommon for other employees responsible for computer maintenance to work on his computer. Claimant also sets forth that Employer failed to provide any witnesses to corroborate that Claimant was the individual who, in fact, used his computer in an improper way. Claimant cites *Conemaugh Med. Ctr. v. Unemployment Compensation Board of Review,* 814 A.2d 1286, 1288 (Pa.Cmwlth.

---

**3.** In Finding of Fact No. 2, the Board found: On the morning of January 28, 2004, [Employer], as required by [Claimant's] contract, gave [C]laimant a six-months notice that he will be discharged on July 28, 2004. R.R. at 183a.

2003), for the proposition that an employer fails to prove that a claimant violated a work rule where it cannot "produce a single witness to testify to a visual sighting of [the claimant] using the computer in a way that violated the work rule." We disagree.

 The record demonstrates that the Board had substantial evidence upon which to determine that Employer had met its burden of demonstrating that Claimant had committed willful misconduct. The record is clear that over 150 pornographic images were found on the computer assigned to Claimant and that such images were accessed during work hours using the assigned computer with Claimant's own log-in and password. R.R. at 73a, 75a–78a; 81a–82a; 117a–126a. In addition, such access to pornographic material occurred on 16 separate days over a 90–day period. R.R. at 118–126a. Furthermore, the fact that Employer failed to present any witness to testify concerning a visual sighting of Claimant using the computer in a way that violated a work rule is of no consequence. As the Court set forth in *Burchell v. Unemployment Compensation Board of Review*, 848 A.2d 1082, 1084 (Pa.Cmwlth.2004), where evidence demonstrates that files "containing pornographic material were found in the computer" used by the claimant, such evidence may support the conclusion that the claimant "was using employer's computer to download pornographic material in violation of the employer's written policy and in disregard of the standard of behavior which the employer has a right to expect of an employee."

Here, the Board had substantial evidence to conclude that Claimant was using Employer's computer in violation of its computer and e-mail usage policy.[4]

4. Claimant also argues that the Board erred in failing to afford Claimant the opportunity to examine the computer and procure expert

Accordingly, we affirm the order denying benefits under Section 402(e) of the Law.

### ORDER

AND NOW, this 15th day of June, 2005, the order of the Unemployment Compensation Board of Review is hereby AFFIRMED.

testimony. We find such argument without merit.